**Barry WEINSTEIN, Plaintiff,**

v.

**Jack EHRENHAUS and Stanley Mesnick, both individually and doing business as Jack Ehrenhaus Associates, and Jack Ehrenhaus Associates, a New York Partnership, Defendants.**

No. 84 Civ. 5641.

United States District Court,
S.D. New York.

March 14, 1988.

Paul K. Rooney, P.C., New York City, for plaintiff.

Cooper & Cooper, New Rochelle, Goodkind, Wechsler, Labaton & Rudoff, New York City (Douglas A. Cooper, New Rochelle, N.Y., and Martiss V. Anderson, New York City, of counsel) for defendants.

LEVAL, District Judge.

Defendants move for an Order pursuant to Rules 37(b) and 37(d) F.R.Civ.P. dismissing the complaint for plaintiff's failure to comply with discovery orders and failure to appear at his own deposition. The motion is granted.

BACKGROUND

The complaint alleges that the defendants Jack Ehrenhaus and Stanley Mesnick admitted plaintiff Barry Weinstein into membership in a real estate partnership doing business under the name Ehrenhaus Associates, that as a partner he was entitled to a participation in the profits of the partnership, that during the four months in which he was a partner the partnership acquired 18 East 41st Street and that he is entitled to an accounting for the profits of the partnership during those four months, including profits resulting from the acquisition of that property.

Defendants deny that Weinstein was ever admitted to membership in the partnership. They assert that plaintiff was employed under an agency agreement entitling him to fifteen percent of the profits of any transaction he brought to the firm.

The action was commenced on August 8, 1984. From the beginning, plaintiff conducted this litigation in bad faith. His prosecution of the action has been marked by his refusal to appear for deposition, failure to turn over properly demanded dis-

closure in spite of court order, evasiveness in complying with defendants' legitimate discovery requests, and the fraudulent filing of a lis pendens. Twice, I have considered imposing sanctions on plaintiff for his contumacious conduct. Plaintiff has repeatedly changed lawyers and is now represented by his fifth attorney.

On November 30, 1984, the Court issued its first scheduling order, setting June 21, 1985 as the date for close of discovery. Defendants initiated discovery by serving requests for production of documents and a notice to take plaintiff's deposition on March 12, 1985. Walsh Aff. ¶ 12. Plaintiff did not produce the requested documents and failed to appear for his deposition. The purported reason for plaintiff's failure to comply with discovery was the withdrawal of plaintiff's second counsel of record after plaintiff had failed to make payment for the representation. Mukasey Aff. ¶ 3.[1]

Following substitution of counsel, discovery commenced anew and plaintiff's deposition was scheduled for April 30, May 7 and May 9, 1985. Plaintiff appeared at first; however, on May 9, 1985, Weinstein announced through counsel that he was "unwilling to proceed further" with the deposition.

With the consent of both parties, the original date for close of discovery was extended first to September 20, 1985 and then to October 25, 1985. Counsel then agreed that Weinstein's deposition would continue on October 17 and 18, 1985, just prior to the date the court ordered for the close of discovery. Walsh Aff. ¶ 17. On October 4, 1985, however, Weinstein through counsel informed the defendants that he would not appear for the scheduled deposition. The purported reason was again plaintiff's counsel's request to withdraw as counsel in part for plaintiff's failure to pay bills for legal fees. Walsh Aff. ¶ 19.

Aggrieved by plaintiff's continued failure to appear for deposition, defendants thereupon filed a motion for sanctions under Rule 37, F.R.Civ.P. By Order of February 6, 1986, I denied defendants' motion for sanctions, directed the plaintiff to submit to completion of his deposition within 30 days, and set the date for completion of discovery for April 15, 1986. Order of Feb. 6, 1986.

The litigation then moved on to another front. Much of plaintiff's claim centers on the property at 18 East 41st Street owned by Ehrenhaus Associates through the limited partnership of Manhattan Fifth Avenue Associates. In the fall of 1986, defendant entered into an agreement to sell the property with the closing to be accomplished by December 29, 1986 for tax reasons. When Weinstein learned of the proposed sale, he filed a lis pendens in state court against the property without knowledge of his counsel. In the lis pendens plaintiff falsely stated that the action in this Court was for specific performance and was against Manhattan Fifth Avenue Associates. By these untruthful representations, plaintiff met the state law requirements for a lis pendens.[2]

Subsequently on November 25, 1986, Weinstein's counsel, unaware of the lis pendens Weinstein had secured, filed a motion to restrain the sale of the property, or, in the alternative, to deposit the proceeds of the sale and all closing documents evidencing the sale with the Court.

Meanwhile, at the closing of the property in December 1986, a title search revealed the existence of the lis pendens. The lis pendens would have prevented the closing and deprived the parties of the tax benefits that depended on concluding the transaction before December 31. An urgent telephone conference was held with this Court. Plaintiff initially refused to lift the lis pendens. Only after I threatened sanctions did plaintiff agree to vacate the lis pendens.

---

1. Plaintiff's first set of attorneys, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, withdrew from the representation on August 8, 1984 due to a conflict of interest.

2. Under New York law, a lis pendens may be filed without notice where "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y. Civ.Prac.Law § 6501 (McKinney 1980).

In his November 25, 1986 motion, Weinstein had also sought leave to amend his complaint to assert a fraud count and an order compelling the defendants to furnish more specific answers to interrogatories. At a conference on November 6, 1986, Weinstein's attorney stated that Weinstein had taped conversations which supported the fraud count. Cooper Affirmation of March 12, 1987 ¶ 25.

Defendants cross-moved for Rule 11 sanctions based on the filing of the lis pendens and leave to amend their answers to assert counterclaims for abuse of process and malicious prosecution, and, based upon plaintiff's counsel's representation regarding the tapes, sought discovery of plaintiff's tape recordings of any parties or potential witnesses.

By Order of June 4, 1987, I denied the motions of both sides to assert new claims, but granted defendants' motion for additional discovery. I also denied the motion for sanctions with leave to renew. Order of June 4, 1987.

The present motion, set against the backdrop of plaintiff's repeated failure to appear for deposition and plaintiff's filing of the fraudulent lis pendens, is based on plaintiff's noncompliance with my June 4, 1987 Order and a subsequent Order entered July 22, 1987.

The June 4, 1987 Order granted defendants' request for discovery of plaintiff's tape recordings. Weinstein did not produce the tape recordings but advanced a claim he had not earlier asserted—that the tapes were protected by privilege. I then ordered that the tapes be produced for inspection at the deposition of plaintiff scheduled for July 23, 1987, and ruled against plaintiff on his claim of privilege on all tapes made prior to April 3, 1987. Order of July 22, 1987.

At the deposition, Weinstein produced only four tapes, refused to let defendant's counsel hear any of them, and stated for the first time that other tapes (as many as four) may have been lost or erased. Weinstein stated that the four tapes were as many as he was "able to find at this point."

At the conclusion of the deposition, the parties set August 10 and 11, 1987 for the continuation of plaintiff's deposition, which they agreed to change to August 27, 1987. Cooper Aff. ¶ 27. On August 26, the eve of the deposition, plaintiff through counsel informed the defendants that he would not appear the next day for the deposition. The reason was, once again, that his fourth set of attorneys, Blaustein and Wasserman, had decided to seek to be relieved.

Defendants thereupon, on September 30, 1987, filed the instant motion for an Order dismissing the complaint. On October 2, 1987, Blaustein and Wasserman formally moved to be relieved as counsel and, on November 12, 1987, Paul K. Rooney, P.C. was substituted as counsel for the plaintiff. After the present motion was filed, plaintiff turned over copies of 17 tape recordings to defendants. Power Aff. ¶ 6.

## DISCUSSION

The discovery process under the Federal Rules of Civil Procedure is designed to allow parties to narrow the issues, obtain evidence for use at trial, and secure information about the existence of evidence. Wright & Miller, Federal Practice and Procedure, Civil 2d § 2001 (1970). Conducted properly, it avoids a trial in which the victor is determined by surprise and concealment rather than by the merits of the cause.

Rule 37 provides a variety of available sanctions to assure proper discovery. *See National Hockey League v. Metropolitan Hockey League*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.1979). Among the sanctions authorized by Rule 37 are orders reimbursing the opposing party for expenses, striking out portions of the pleadings, prohibiting the introduction of evidence, deeming disputed issues determined adversely to the position of the disobedient party, or rendering a default by the disobedient party.

The most severe in the spectrum of sanctions, *National Hockey League v. Metropolitan Hockey League*, 417 U.S. at 640, 96

S.Ct. at 2779; *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d at 1066, is an order "dismissing the action or proceeding." F.R. Civ.P. Rule 37(b)(2)(C). This sanction should rarely be used, especially when the noncompliance is not attributable to willfulness, bad faith or fault. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958). Where, however, the party in noncompliance has acted willfully, the Supreme Court has instructed that the dismissal sanction "must be available to the district court ... not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey League*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1974); *see Ford v. American Broadcasting Co.*, 101 F.R.D. 664, 667 (S.D.N.Y.1983).

This plaintiff's conduct has been egregious throughout the litigation. He has failed to appear at three scheduled depositions, and has been evasive and uncooperative when he has attended. He has improperly attempted to circumvent this court's jurisdiction through a fraudulent lis pendens filing.

The full record demonstrates repeated willful obstruction as well as fraud. Most recently, plaintiff has willfully failed to obey this Court's June 3, 1987 and July 22, 1987 Orders to provide discovery and to attend his own deposition. F.R.Civ.P. Rules 37(b)(2); 37(d).

In their cross-motion for further discovery, defendants clearly requested "any and all tape recordings or mechanical rec-ordation of conversations had by [plaintiff] or by someone on his behalf with any of the following: a) a party to this action; b) a witness or potential witness; c) or any other person who was contacted by or on behalf of plaintiff in connection with this litigation." My June 3, 1987 Order granted that request. Based on that Order, defendants requested and received a list of all tape recordings made by plaintiff that address this case. The list indicated that conversations with fifteen individuals were still extant.[3] Plaintiff nevertheless refused in direct violation of my Order to produce the tapes.

By my July 22, 1987 Order, I directed plaintiff to produce all the tape recordings made prior to April 3, 1987 at his deposition scheduled for July 23, 1987. Plaintiff produced only four of the tapes at his deposition, claiming that the others could not be located, and refused to allow them to be played. Not until after the motion for sanction was filed did plaintiff produce copies of the 17 tape recordings in his possession.[4]

At the deposition, Weinstein engaged in a pattern of conduct designed to prevent defendants from discovering relevant evidence. *Nittolo v. Brand*, 96 F.R.D. 672, 676 (S.D.N.Y.1983). He refused to reveal where he was working, on whose machine he taped the conversations, and when he started making tapes. When asked, he stated that he started making tapes when he started "making tapes."

Plaintiff's production at deposition was inconsistent with his earlier representations to the Court. At the July hearing, he had represented that the dates of the recordings were written on the tapes. However, contrary to that representation, only two of the four tapes produced were dated.

---

**3.** Plaintiff claims that the list of tape recordings which he provided defendants consisted of those recordings that had at one time been made, and that some of those recordings had been erased. Plaintiff did not mention that possibility at the July 15th hearing. Defendants' letter asking for the tape recordings clearly requested a list of those tapes in existence and a separate list of those no longer in existence. Cooper Reply Aff. exh. A. Plaintiff's letter in response identified sixteen tapes only one of which it stated was no longer in existence. Cooper Aff. exh. C.

**4.** Plaintiff's belated compliance with his discovery obligations does not excuse or in any way mitigate plaintiff's failure to comply with this Court's orders. *See Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979).

Weinstein then failed to appear for the scheduled continuation of his deposition on August 27, 1987, informing the defendants of his inability to attend only on the eve of the deposition. The result of these delays is that plaintiff's deposition has yet to be completed, three and one-half years after the suit was filed and almost three years since his deposition commenced.

Plaintiff's assertion that he could not produce the tapes because he was in the process of moving is incredible. Plaintiff was on notice at least as early as June 3, 1987, the date of my first Order, that he would have to produce all the tapes. At the hearing on July 15, 1987, called to discuss whether plaintiff would have to produce the tapes, plaintiff never once indicated that there might be a problem with their production. Not until he appeared for deposition did Weinstein indicate to the defendants that he did not have a full set of the tapes presently in his possession. After defendants filed their motion to dismiss, and after the entry of a fifth lawyer whose first task was to contemplate this motion for sanctions, only then did plaintiff finally produce the full set of tapes.

I have considered the factors that the Court of Appeals in *Alvarez v. Simmons Research Bureau, Inc.*, 839 F.2d 930 (2nd Cir.1988), suggested should guide the decision to dismiss and I find that they weigh heavily in favor of dismissal, notwithstanding plaintiff's very belated production of the delinquent tapes. Plaintiff's continued obstreperous conduct has prejudiced defendant's ability to develop his case and resulted in additional expense to the litigants and the court system. I have considered alternatives to dismissing this action and have found that they would be an inadequate response to so egregious and willful a pattern of obstruction and disregard of court orders. For the reasons stated, the motion for dismissal under Rule 37 is clearly warranted, and it is hereby granted.

## CONCLUSION

The motion to dismiss under F.R.Civ.P. Rules 37(b)(2)(C) and 37(d) is granted.

SO ORDERED.